**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IRIS PEREZ, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-13-CV-429-XR |
| | § | |
| MONICA TEDFORD, et al., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**ORDER**

On this date, the Court considered Defendants' partial motion for summary judgment with respect to Defendant Trujillo. Doc. No. 26.   After careful consideration, the Court GRANTS the motion.

**BACKGROUND**

This case arises out of an interaction between Plaintiff Iris Perez and members of the San Antonio Police Department ("SAPD").  Ms. Perez was previously employed by Communities in Schools of San Antonio ("CIS") as a case manager.  In February 2012 Plaintiff called the SAPD to request that they investigate a potential violation of a restraining order that Ms. Perez believed posed a potential danger to a student.  Although it appears that the SAPD looked into the matter, Ms. Perez was evidently not satisfied with the investigation and decided to express her anger on Facebook.  Ms. Perez posted:

> I Love and Respect the fact that my husband is a fine San Antonio
> Police Officer, and I respect, and am Grateful for, every HARD
> working S. A. Police Officer....but lazy ass, mother-effers on B-
> shift who don't care to do their jobs the way they're supposed

1

> to....even when being half assed about things means
> putting/leaving a child in danger...need to get the F--- [expletive
> deleted by Court] off the force! Yeah, I said it!

Ms. Perez's husband is a SAPD officer assigned to the South Patrol station.  She alleges that a copy of the above post was displayed at the station.

On February 28, 2012, Plaintiff alleges that SAPD Sergeants Monica Tedford and Steven Trujillo went to McCollum High School and informed the school principal that they needed to speak with Plaintiff about a complaint.  When Plaintiff arrived at the Principal's office, she alleges that Sgt. Tedford told the Principal that Plaintiff should be disciplined for posting the Facebook message and that failure to do so would "endanger relations" between SAPD and McCollum High School.  Plaintiff also alleges that Sgt. Tedford demanded that she apologize for posting her Facebook message and that she refused to do so, citing her right to free speech.  As of February 29, 2012, Ms. Perez was no longer assigned to McCollum High School.  It is unclear whether her employment with CIS was terminated.

On May 21, 2013, Plaintiff filed an original complaint in this Court. Doc. No. 1.  She alleges that Defendants violated her rights to freedom of assembly, free speech, the right to "redress grievances against the government," and her right to be free of unreasonable seizures and right to due process.  On October 22, 2013, the Court dismissed the claims except for the individual capacity First Amendment claims against Sgt. Tedford and Sgt. Trujillo.  Doc. No. 21.  On November 27, 2013, Sgt. Trujillo filed a motion for summary judgment on the basis of qualified immunity. Doc. No. 26.

**LEGAL STANDARD**

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-252 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

**DISCUSSION**

Sgt. Trujillo argues that summary judgment is warranted on the basis of qualified immunity. Doc. No. 26. Government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, the courts apply the two-part test established in *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). Under this framework, the

Court decides "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009).[1] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) (quoting *Saucier*, 533 U.S. at 202). When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). The Court has discretion over which prong of the qualified immunity test to address first. *Pearson,* 555 U.S. at 223.

In this case, Ms. Perez alleges that Sgt. Trujillo is liable for failing to prevent Sgt. Tedford from allegedly violating her constitutional rights. Am. Compl. ¶ 96. Turning to the second prong of the qualified immunity test, the issue before the Court is whether Plaintiff has demonstrated that she possessed a clearly established right to have Sgt. Trujillo intervene on her behalf.[2] Framed differently, the inquiry is narrowly focused on whether it would have been clear to a reasonable officer in Sgt. Trujillo's position that he was under an obligation to intervene.

The parties agree that law enforcement officers can sometimes be under an obligation to intervene to prevent the use of excessive force by fellow officers in their presence. Generally, "an officer who is present at the scene and does not take reasonable measures to protect a suspect

---

[1] If the answer to either of the two above questions is "no," qualified immunity applies and the government official is immune from suit.

[2] Plaintiff argues that the right to be free from governmental retaliation for protected speech is clearly established. However, that is not the same thing has having a clearly established right to have a bystander official intervene. In the excessive force context, courts grant qualified immunity to the officers who failed to intervene while permitting the case to go forward against the officer(s) who committed the underlying infraction. *See, e.g. Deshotels v. Marshall*, 454 F. App'x 262, 265 (5th Cir. 2011) (granting qualified immunity for officers who failed to intervene when fellow officer tased a suspect repeatedly, leading to his death).

from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). However, so-called bystander liability has only been applied to officers who fail to intervene to prevent the use of excessive force. *See Whitley v. Hanna*, 726 F.3d 631, 647 (5th Cir. 2013) (discussing bystander liability in excessive force cases).

Ms. Perez argues that these excessive force cases imply that law enforcement officials have a general duty to intervene to prevent *all* constitutional harms by other officers. Doc. No. 27. To the extent that courts are not even clear as to what the contours of those constitutional rights are, it would be inappropriate to charge law enforcement with such a duty. *Pearson*, 555 U.S. at 245 ("[I]f judges . . . disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy."). Ms. Perez's attempt to extrapolate a general duty to intervene from the excessive force cases is contrary to accepted qualified immunity doctrine. The Supreme Court is clear that the right in question may not be defined at a high level of generality and must be particularized to be "clearly established." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). Thus, Plaintiff cannot rely on a highly generalized duty to intervene theory to defeat Sgt. Trujillo's qualified immunity defense.

Ms. Perez does not cite any case law imposing a duty to intervene on an officer to prevent or mitigate a First Amendment violation. In *Keating v. City of Miami*, 598 F.3d 753 (11th Cir. 2010), the Eleventh Circuit rejected qualified immunity defenses for supervisory officers who had directly ordered subordinates to commit First Amendment violations. Notably, the court

was clear that the any officer who did not have the authority to stop the constitutional violation was not liable for failing to intervene and could assert a qualified immunity defense. *Id.* In this case, Plaintiff does not allege that Sgt. Trujillo ordered Sgt. Tedford to make the comments that are the subject of this lawsuit. Thus, *Keating* is readily distinguishable because Sgt. Trujillo was not Sgt. Tedford's supervisor and did not order her to not to make the comments.

Accordingly, *Keating* alone does not make a duty to intervene to prevent First Amendment harms "clearly established," such that qualified immunity would be inappropriate. As noted previously, for the obligation to be "clearly established," this Court "must be able to point to controlling authority—or a robust 'consensus of persuasive authority' that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011)).   Here, there is plainly not a "robust consensus" of authority imposing a duty to intervene in the First Amendment context.

Ms. Perez is correct that she does not need to find a case directly on point in order for Sgt. Trujillo's duty to intervene to have been "clearly established."   Doc. No. 27 at 6, citing, *Wilson v. Layne*, 526 U.S. 603, 615 (1999).   However, the legal question must also be "beyond dispute." *See, e.g. al-Kidd*, 131 S. Ct. at 2075.   On the contrary, the obligation of an officer to step in to prevent a fellow officer from making statements that may constitute unlawful retaliation is a novel legal issue.   If, as is the case here, case law does not clearly demonstrate the existence of a duty to intervene outside of the excessive force context, then a reasonable officer in Sgt. Trujillo's position would have no reason to know that such a duty existed.   Accordingly, Defendant Trujillo is entitled to a qualified immunity defense.

**CONCLUSION**

In light of the foregoing analysis, Sgt. Trujillo did not violate a clearly established right by failing to intervene to protect Plaintiff from allegations of First Amendment harms. Accordingly, the suit against Sgt. Trujillo is barred by qualified immunity and is DISMISSED. The only claim remaining in this case is the individual capacity claim against Sgt. Tedford.

SIGNED this 23rd day of December, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE